FILED'09 NOV 24 13:15 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| CASEY LEE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-1659-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MAX WILLIAMS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Casey Lee Johnson
SID #12151379 LEGAL MAIL
SRCI
777 Stanton Blvd.
Ontario, Oregon  97914

　　Pro Se Plaintiff

Jacqueline Sadker Kamins
Kristin A. Winges
State of Oregon
1162 Court Street, NE
Salem , Oregon  97301

　　Attorneys for Defendants

Page 1 - OPINION AND ORDER

KING, Judge:

Pro se plaintiff Casey Lee Johnson is an inmate who is presently incarcerated at the Oregon State Penitentiary's Intensive Management Unit ("IMU"). He filed this 42 U.S.C. § 1983 action against Department of Corrections officials Max Williams, Brian Belleque, Stan Czerniak, Brandon Kelly, Daryl Ruthuen, Donald Dravis, William Bellman, and John Vargo ("defendants") alleging that the IMU placement process, conditions of the IMU, and the lack of mental health treatment in the IMU violated his constitutional rights. Before the court is Johnson's Motion for Preliminary Injunction (#65). Johnson seeks immediate release from the IMU. For the reasons set forth below, the motion is denied.

## FACTS

Johnson is currently serving six years in prison for two separate incidents of assault against prison officers. His current IMU placement has its roots in his previous stint in prison, during which he also spent significant amounts of time in the IMU. On March 16, 2006, Johnson assaulted a staff member at the Oregon State Correctional Institution ("OSCI"). Although he was to serve 180 days in the Disciplinary Segregation Unit as a sanction, on April 21, 2006, Johnson was released on parole. In July 2006, while on parole, Johnson was arrested on new charges for Menacing and Felony Possession of a Weapon. He was housed in Multnomah County jail, where he assaulted two Multnomah County jail deputies. On January 3, 2007, Johnson pled guilty in Multnomah County Circuit Court to Assault of a Public Safety Officer. He was sentenced to 24 months in prison. When admitted to the Oregon Department of Corrections ("ODOC") on January 4, 2007, Johnson already had a Marion County detainer and he began awaiting criminal proceedings for his March 2006 assault of OSCI staff. In June 2007, Johnson was convicted of

Assault on a Public Safety Officer, in connection with the March 2006 incident, and sentenced to 48 months in prison, to be served consecutively with his first sentence.

Johnson's numerous assaults on jail and prison staff were the basis for ODOC's January 17, 2007 decision to assign Johnson a Level 5 custody classification and January 19, 2007 decision to place him in the IMU. Cooney Aff. Attach. 4 at 2. Level 5 is the highest level of supervision assigned to an inmate. It is assigned to an inmate who "presents extreme risk of escape, violence, or disruption to the safe, secure, and orderly operation of a Department of Corrections facility." Cooney Aff. ¶ 8. "On March 15, 2007, Johnson received and signed for a copy of his IMU Assignment Packet, which included a copy of his Level 5 custody classification score." Cooney Aff. ¶ 37, Attach. 4 at 4. The same day Johnson filed a request for administrative review of his Level 5 classification. On April 3, after concluding that Johnson "continues to demonstrate serious management concerns and [that] his behavior poses a sufficient threat that it can only be adequately controlled in appropriate special housing," Barbara Cooney affirmed the recommendation of IMU placement and Level 5 designation. Cooney Aff. ¶ 39. Since being assigned to the IMU, Johnson alleges he has been unable to exhibit the behavior necessary to graduate out of the placement because he has not received adequate mental health treatment.

Johnson asserts that he "is suffering from mental illnesses, learning disabilities, behavioral problems, bipolar disorders, antisocial personality disorders and neurological impairments." Winges Aff. Attach. 1 at 2. To combat his mental issues, during Johnson's previous 7-year stint in prison, he "tr[ied] a number of different medications . . . [and] conclud[ed] that Neurontin (a mood stabilizer) and Ritalin are the most effective for him."

Page 3 - OPINION AND ORDER

Johnson Decl. Ex. 3 at 4. Johnson alleges that once placed in the IMU, defendants "improperly [discontinued his] mood stabilizers and antipsychotic medication in which [sic] he has been prescribed for nine years." Pl.'s Mem. Supp. Mot. Prelim. Inj. 5. Although Johnson alleges his medications were discontinued as retaliation for poor behavior, he also acknowledges "[d]efendant[s] have [discontinued] antipsychotic medication Seroquel for past misconduct for mishandling the medicine." Pl.'s Mem. Supp. Mot. Prelim. Inj. 11. Johnson also alleges "[d]efendants have refused all types of cognitive behavioral therapy and interpersonal therapy thats [sic] necessary to control plaintiffs [sic] illnesses." Pl.'s Mem. Supp. Mot. Prelim. Inj. 5. Despite Johnson's assertions of requests for therapy, during a psychological evaluation he "voiced a strong desire for psychotropic medications, but vehemently rejected any need for mental health therapy." Johnson Decl. Ex. 3 at 2.

## LEGAL STANDARDS

A party is entitled to preliminary injunctive relief if it

> demonstrates that it is likely to succeed on the merits and may suffer irreparable injury, or that serious questions exist on the merits and the balance of hardships tips in its favor. The two tests are not separate but represent a sliding scale in which the required probability of success on the merits decreases as the degree of harm increases.

Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 913 (9th Cir. 1995) (citation omitted). "The Supreme Court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way." Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1042 (9th Cir. 1999) (citations omitted).

## DISCUSSION

Johnson argues that discontinuation of his mental health treatment and medication amounts to cruel and unusual punishment, and that "the decision to place a seriously mentally ill inmate in [the IMU] is an Eighth Amendment violation in itself." Pl.'s Mem. Supp. Mot. Prelim. Inj. 8. He argues preliminary injunction should be granted to remove him from the IMU because "the devastating effects of a prolonged isolation even on 'normal' prisoners cause [sic] irreparable injury." Pl.'s Mem. Supp. Mot. Prelim. Inj. 3.

Johnson also argues he was placed in the IMU without notice of the factual basis for the decision, that he was not given a fair opportunity for rebuttal, and that the processes for retention and determining differing levels of treatment in the IMU are generally insufficient under the Due Process Clause.

Defendants argue the court should deny the motion for preliminary injunction because claim and issue preclusion make Johnson unlikely to succeed on the merits.[1]

I. Claim and Issue Preclusion

This is not the first time Johnson has litigated various aspects of his detention in the IMU. Johnson has litigated to conclusion at least one state court action and two federal court actions related to the constitutionality of his placement in and the conditions of the IMU.

A. The State Habeas Proceeding

Johnson's litigation for his Petition for Writ of Habeas in Johnson v. Belleque, Marion County Circuit Court Case No. 07C12531, makes issue preclusion likely to bar his instant

---

[1] I need not reach the other grounds argued by defendants because I find that Johnson's suit is precluded.

Page 5 - OPINION AND ORDER

claims. The preclusive effect of a state court action on subsequent federal court litigation is governed by the state's law of issue preclusion. See Dodd v. Hood River County, 136 F.3d 1219, 1225 (9th Cir. 1998). Under Oregon law, if one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding if (1) the issue in the two proceedings is identical, (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding, (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue, (4) the party sought to be precluded was a party or was in privity with a party to the prior proceeding, and (5) the prior proceeding was the type of proceeding to which this court will give preclusive effect. Nelson v. Emerald People's Util. Dist., 318 Or. 99, 104, 862 P.2d 1293, 1296-97 (1993).

Here, the requirements for issue preclusion are satisfied, with the possible exception of the second and third elements.

First, the issues in the two proceedings appear identical. In Johnson's state court Petition for Writ of Habeas, he alleges violations of his rights under the Due Process Clause, the Equal Protection Clause, and his right to be free from cruel and unusual punishment under the Eighth Amendment. Johnson seems to assert his due process rights were violated because he was not given a hearing prior to being placed in the IMU, and that placement segregated from other prisoners is a violation of the Equal Protections Clause. Johnson's Eighth Amendment claim relates to the State's alleged failure to provide necessary mental health services in the IMU, confinement allegedly without adequate heat and ventilation, and other conditions of the IMU.

Johnson's Fourth Amended Complaint filed in this case contains two claims. One claim asserts that the alleged conditions in the IMU, such as inadequate ventilation, little stimuli or

Page 6 - OPINION AND ORDER

exercise, twenty-four-hour illumination, and excessive noise, violate Johnson's rights under the Eighth and Fourteenth Amendments. The second claim alleges that the State has failed to provide adequate mental health treatment. The issues in the instant proceeding, whether the conditions and mental health treatment in the IMU are adequate, are, therefore, identical to issues raised in the state habeas proceeding.

Second, the issues were likely actually litigated and were likely essential to a final decision on the merits in the state habeas proceeding. In Oregon state courts a habeas proceeding must consider a challenge to IMU placement on the merits if there is an alleged need for immediate attention based on a violation of constitutional rights, and if an alternative remedy is practically inadequate to meet this need. Barrett v. Belleque, 209 Or. App. 295, 299, 150 P.3d 1064, 1065 (2006). Judge Ochoa, who ruled on Johnson's Petition for Writ of Habeas, has a track record of addressing the merits of IMU placement, even when the above conditions are not satisfied. See id. at 298 (explaining trial court Judge Ochoa considered Petition for Writ of Habeas where inmate challenged IMU placement, and denied based on case law addressing constitutionality of such placement). In the case at bar, Judge Ochoa wrote:

> The Court, having fully considered the pleading, motions, memoranda, exhibits, testimony, and having heard the arguments of counsel, and having ruled from the bench that plaintiff had failed to establish his claim for habeas corpus relief by a preponderance of the evidence . . . JUDGMENT is entered . . . in favor of defendant.

Winges Aff. Attach. 2. Although the record does not include transcripts from the state habeas proceedings, Judge Ochoa's process of dealing with the IMU placement challenge on the merits in Barrett establishes it is sufficiently likely the issues were actually litigated and were essential to a final decision on the merits. I note, however, that were I considering a motion to dismiss or

Page 7 - OPINION AND ORDER

a motion for summary judgment, I would need excerpts from the transcript in order to be certain Judge Ochoa made his decision on the merits.

Third, Johnson has had a full and fair opportunity to be heard on the issues in question. Oregon courts consider this element met where there is no restriction on the evidence a plaintiff is allowed to adduce at a hearing, or limitation on the time plaintiff has to put on such evidence. See Barackman v. Anderson, 214 Or. App. 660, 668-69, 167 P.3d 994, 1000 (2007). A habeas proceeding may afford the opportunity for a full and fair opportunity to be heard. See Pham v. Thompson, 156 Or. App. 440, 447-48 (1998) (holding inmate's challenge to validity of disciplinary proceedings in habeas proceeding not barred by issue preclusion because court decided outcome on basis of mootness and merits of issues were not actually litigated). In addition, the Ninth Circuit has held that an evidentiary hearing in a state habeas case satisfies the requirement of a full and fair opportunity to be heard and determined under federal standards. Silverton v. Dep't of Treasury of U.S., 644 F.2d 1341, 1347 (9th Cir. 1981). Here, the "habeas proceeding came before the Court for an evidentiary hearing." Winges Aff. Attach. 2. The state court considered all documentation provided and heard oral arguments. In addition, Johnson was represented by counsel. Without the benefit of the transcript from the habeas proceeding, it is impossible to know for certain if any restrictions were placed on Johnson's presentation of evidence. It is sufficiently likely, however, that Johnson had a full and fair opportunity to be heard.

Fourth, the party sought to be precluded here, Johnson, was clearly a party in the state habeas proceeding.

Fifth and finally, the state habeas proceeding was the type of proceeding to which this court will give preclusive effect. Oregon state courts give habeas proceedings preclusive effect. See Eli v. Lampert, 194 Or. App. 280, 287, 94 P.3d 170, 174 (2004). Ninth Circuit courts are also bound: "because of the nature of a state habeas proceeding, a decision actually rendered should preclude an identical issue from being relitigated in a subsequent § 1983 action if the state habeas court afforded a full and fair opportunity for the issue to be heard and determined under federal standards." Silverton, 644 F.2d at 1347 (holding issue preclusion prevented California attorney who used state habeas proceeding to seek injunction requiring state bar to expunge references of disbarment from relitigating the same issue in a § 1983 action in federal court).

Although I cannot be certain that the state habeas proceeding dealt with the issues Johnson raises in this case and met the requirements of the second and third elements, given Judge Ochoa's decision-making process in Barrett, given the wording of his judgment, and given my findings on the other elements, I conclude that Johnson is not likely to succeed on the merits due to issue preclusion.

Claim preclusion related to the state habeas proceeding is equally likely to bar Johnson's instant claims. The State argues that claim preclusion applies to this case, citing Ninth Circuit precedent. It must be noted, however, that in determining the preclusive effect of a state court judgment, a federal court "must apply the [preclusion] rules of the state that rendered the underlying judgment." Zamarripa v. City of Mesa, 125 F.3d 792, 793 (9th Cir. 1997). "Claim preclusion [in Oregon] works to prevent a party who has litigated one action through to a final judgment from bringing another action against the adverse party when the second claim: 1) involves the same parties and the same facts as in the first action, 2) seeks an additional or

Page 9 - OPINION AND ORDER

alternative remedy, and 3) could have been raised in the first action." Qwest Corp. v. City of Portland, 385 F.3d 1236, 1243 (9th Cir. 2004) (citing Secors Inv., LLC v. Anderegg, 188 Or. App. 154, 71 P.3d 538 (2003)), overruled on other grounds by Sprint Telephony PCS, L.P. v. County of San Diego, 543 F.3d 571 (9th Cir. 2008). It is also worth noting that "the principle of res judicata is applicable to habeas corpus proceedings." Barber v. Gladden, 215 Or. 129, 133, 332 P.2d 641, 643 (1958).

Here, the elements of claim preclusion are also present. First, the state habeas proceeding involves the same parties and likely the same facts as the case at bar. Johnson and Brian Belleque were and are, respectively, plaintiff and defendant in the state habeas and present cases. Moreover, the facts in both cases revolve around whether the conditions and mental health treatment in the IMU were constitutionally adequate. Second, the instant claim seeks additional remedies. Apart from the injunctive relief sought in the habeas proceeding and the instant action, Johnson now also seeks declaratory and compensatory relief. Third, to the extent Johnson raises claims in this proceeding that he failed to bring in the state proceeding, he had the opportunity to do so in the state habeas action.

In sum, Johnson's likelihood of success on the merits is cast further in doubt by the likelihood of defendants' success with the defense of claim preclusion.

B. The Previous Litigation in U.S. District Court

Defendants argue that issue and claim preclusion stemming from Johnson's two previous actions in federal court require denial of the instant Motion for Preliminary Injunction. The doctrine of collateral estoppel, or issue preclusion, dictates that "once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a

Page 10 - OPINION AND ORDER

different cause of action between the parties." Kremer v. Chemical Constr. Corp., 456 U.S. 461, 467 n.6 (1982).

Under the federal common-law doctrine of claim preclusion, a final judgment on the merits, rendered by a court of competent jurisdiction, is conclusive and constitutes an absolute bar to a subsequent lawsuits involving the same cause of action against the same defendant or those in privity with that defendant. Montana v. United States, 440 U.S. 147, 153 (1979). To determine whether successive lawsuits involve the same cause of action, a court must consider the following factors:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. The last of these criteria is the most important.

Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1398 (9th Cir. 1992).

Both "*res judicata* and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94 (1980).

Here, Johnson has previously litigated to conclusion two separate cases in federal court, Johnson v. Czerniak, No. CV 02-292 (D. Or. May 12, 2003) ("Johnson I") and Johnson v. Kulongoski, No. CV 03-377, 2004 WL 1737732 (D. Or. Aug. 03, 2004), aff'd 141 Fed. Appx. 645 (9th Cir. 2005) ("Johnson II"). In Johnson I, Johnson asserted, among other things, that the conditions of his confinement in the IMU amounted to cruel and unusual punishment in violation of the Eighth Amendment. Winges Aff. Attach. 4 at 2. In Johnson II, Johnson alleged, among other claims, that he was denied due process in his placement in the IMU, and that the conditions

Page 11 - OPINION AND ORDER

of his confinement violated the Eighth Amendment right to be free from cruel and unusual punishment. Winges Aff. Attach. 5 at 1-2.

It is likely that Johnson's claims in the instant action regarding violations of the due process clause and the Eighth Amendment are barred by issue preclusion. One of the defendants in Johnson I, Stan Czerniak, is a defendant in the present action. One of the defendants in Johnson II, Brian Belleque, is also a defendant in the present action. The "same parties" requirement, therefore, is satisfied. The issues Johnson litigated in Johnson I and II dealt with the constitutionality of the process of transfer to the IMU and the conditions of the IMU. These are two of the same issues Johnson is litigating in the present case. The "same issue" requirement, therefore, is also satisfied. I conclude that issue preclusion makes Johnson unlikely to succeed on the merits of the present action.

I need not reach whether the "same cause of action" factors mandate that this action could eventually be dismissed on the ground of claim preclusion. Issue preclusion related to Johnson's previous federal litigation, and issue and claim preclusion related to Johnson's state habeas proceeding provide sufficient bases to conclude that Johnson has failed to demonstrate he is entitled to preliminary injunctive relief.

///

///

///

## CONCLUSION

Johnson's Motion for Preliminary Injunction (#65) is denied. Based on the foregoing conclusions, the court will entertain a motion to dismiss from defendants.

IT IS SO ORDERED.

Dated this _____24_____ day of November, 2009.

_____
Garr M. King
United States District Judge