IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**CASEY LEE JOHNSON**,

        Plaintiff,

vs.

**MAX WILLIAMS; STAN CZERNIAK;
BRIAN BELLEQUE; BRANDON KELLY;
DARYL RUTHUEN; DONALD DRAVIS;
WILLIAM BELLMAN; JOHN VARGO**,

        Defendants.

Civil Case No. 07-1659-KI

OPINION AND ORDER

    Casey Lee Johnson
    SID #12151379 LEGAL MAIL
    SRCI
    777 Stanton Blvd.
    Ontario, Oregon  97914

        Pro Se Plaintiff

Page 1 - OPINION AND ORDER

John R. Kroger
Attorney General
Kristin A. Winges
Jacqueline Sadker Kamins
Assistant Attorney General
Department of Justice
1162 Court Street, NE
Salem, Oregon  97301

  Attorneys for Defendants

KING, Judge:

Pro se plaintiff Casey Lee Johnson is an inmate who is presently incarcerated at the Oregon State Penitentiary's Intensive Management Unit ("IMU").  He filed this 42 U.S.C. § 1983 action against Department of Corrections officials Max Williams, Brian Belleque, Mark Nooth, Brandon Kelly, Robert Campbell, William Bellman, Daryl Ruthven, Rebecca Sauer, Shirley Hodges, and John Vargo ("defendants").  Johnson alleges that the IMU placement process, conditions of the IMU, and the lack of mental health treatment in the IMU violates his constitutional rights.  He also alleges that censorship of his outgoing mail, the taking of fines from his inmate trust account, and the denial of his right to practice Satanism violates his First, Eighth, and Fourteenth Amendment rights.  Before the court is Defendants' Motion to Dismiss (#92).  For the reasons set forth below, the defendants' motion is granted in part and denied in part.

## FACTS

Johnson is currently serving six years in prison for two separate incidents of assault against prison officers.  His current IMU placement has its roots in his previous stint in prison, during which he also spent significant amounts of time in the IMU.  On March 16, 2006, Johnson assaulted a staff member at the Oregon State Correctional Institution ("OSCI").  Although he was

Page 2 - OPINION AND ORDER

to serve 180 days in the Disciplinary Segregation Unit as a sanction, on April 21, 2006, Johnson was released on parole. In July 2006, while on parole, Johnson was arrested on new charges for Menacing and Felony Possession of a Weapon. He was housed in Multnomah County jail, where he assaulted two Multnomah County jail deputies. On January 3, 2007, Johnson pled guilty in Multnomah County Circuit Court to Assault of a Public Safety Officer. He was sentenced to 24 months in prison. When admitted to the Oregon Department of Corrections ("ODOC") on January 4, 2007, Johnson already had a Marion County detainer and he began awaiting criminal proceedings for his March 2006 assault of OSCI staff. In June 2007, Johnson was convicted of Assault on a Public Safety Officer, in connection with the March 2006 incident, and sentenced to 48 months in prison, to be served consecutively with his first sentence.

     Johnson's numerous assaults on jail and prison staff were the basis for ODOC's January 17, 2007 decision to assign Johnson a Level 5 custody classification and the January 19, 2007 decision to place him in the IMU. Aff. Barbara Cooney Attach. 4, at 2. Level 5 is the highest level of supervision assigned to an inmate. It is assigned to an inmate who "presents extreme risk of escape, violence, or disruption to the safe, secure, and orderly operation of a Department of Corrections facility." Cooney Aff. ¶ 8. "On March 15, 2007, Johnson received and signed for a copy of his IMU Assignment Packet, which included a copy of his Level 5 custody classification score." Id. ¶ 37, Attach. 4, at 4. The same day Johnson filed a request for administrative review of his Level 5 classification. On April 3, after concluding that Johnson "continues to demonstrate serious management concerns and [that] his behavior poses a sufficient threat that it can only be adequately controlled in appropriate special housing," Barbara Cooney affirmed the recommendation of IMU placement and Level 5 designation. Id. ¶ 39. Since being

Page 3 - OPINION AND ORDER

assigned to the IMU, Johnson alleges he has been unable to exhibit the behavior necessary to graduate out of the placement because he has not received adequate mental health treatment.

Johnson asserts that he "is suffering from mental illnesses, learning disabilities, behavioral problems, bipolar disorders, antisocial personality disorders and neurological impairments." Aff. Kristin Winges Attach. 1, at 2. To combat his mental issues, during Johnson's previous 7-year stint in prison, he tried a number of different medications and concluded that Neurontin (a mood stabilizer) and Ritalin are the most effective for him. Johnson alleges that once placed in the IMU, defendants improperly discontinued his mood stabilizers and antipsychotic medication. Although Johnson alleges his medications were discontinued as retaliation for poor behavior, he also acknowledges "[d]efendant[s] have [discontinued] antipsychotic medication Seroquel for past misconduct for mishandling the medicine." Pl.'s Mem. Supp. Mot. Prelim. Inj. 11. Johnson also alleges defendants have refused to provide any type of therapy that would help with his mental illness. Despite Johnson's assertions of requests for therapy, during a psychological evaluation he "voiced a strong desire for psychotropic medications, but vehemently rejected any need for mental health therapy." Johnson Decl. Ex. 3, at 2.

In addition, Johnson alleges that while confined in the IMU, in July 2008 he drew a swastika on a piece of outgoing mail. According to Johnson, prison official Mark Nooth saw the swastika and subjected Johnson to disciplinary measures for a violation of a rule against unauthorized organizations.

Further, Johnson alleges that, in general, defendant Max Williams and ODOC "refuse[] to recognize Satanism as a mainstream religion and . . . will not allow publication written by The

Page 4 - OPINION AND ORDER

Church of Satan nor the Satanic Bible . . . into the correctional institutions." Pl.'s Fourth Am. Compl. ¶ N.

Finally, Johnson alleges that, on an unspecified date, defendant Williams took, without authority, $42.54 from his inmate trust account.

## PROCEDURAL BACKGROUND

Johnson has previously raised and litigated various arguments related to the constitutionality of his placement in and the conditions of the IMU. In a state court action, with a hearing on January 16, 2008, Johnson litigated to conclusion his state Petition for Writ of Habeas in Johnson v. Belleque, Marion County Circuit Court Case No. 07C12531. Additionally, Johnson litigated to conclusion two separate cases in federal court, Johnson v. Czerniak, No. CV 02-292 (D. Or. May 12, 2003) ("Johnson I") and Johnson v. Kulongoski, No. CV 03-377, 2004 WL 1737732 (D. Or. Aug. 03, 2004), aff'd, 141 Fed. Appx. 645 (9th Cir. 2005) ("Johnson II").

At an earlier stage of the instant litigation, this court denied Johnson's Motion for Preliminary Injunction and held that the prior litigation in state court and in the two federal court actions made Johnson unlikely to succeed in the current action due to claim and issue preclusion. Op. and Order, Nov. 24, 2009, ECF No. 91. Defendants now move to dismiss this case under Federal Rule of Civil Procedure 12(b)(6) on the theory that all of Johnson's claims are barred by issue preclusion and claim preclusion based on the Oregon state court habeas corpus action and the two federal cases.

## LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) will be granted if plaintiff fails to allege the "grounds" of his "entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127

Page 5 - OPINION AND ORDER

S. Ct. 1955, 1964-65 (2007) (quotation omitted) (abrogating Conley v. Gibson, 355 U.S. 41, 45-46 (1957) and its test that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim"). A plaintiff does not need to allege detailed facts, but such a requirement demands "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Id. Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (internal citations and quotations omitted).

Normally, the review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. Diaz v. Int'l Longshore and Warehouse Union, Local 13, 474 F.3d 1202, 1205 (9th Cir. 2007). The court may review, however, a document extrinsic to the complaint if the authenticity of the document is not contested and the document is integral to the claims. Fields v. Legacy Health System, 413 F.3d 943, 958 n.13 (9th Cir. 2005). A second exception is that a court may take judicial notice of matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). "[A] trial transcript is a matter of public record." United States v. Isgro, 974 F.2d 1091, 1095 (9th Cir. 1992). Issue preclusion may be raised in a 12(b)(6) motion to dismiss. Dias v. Elique, 276 Fed. Appx. 596, 598 (9th Cir. 2008). Claim preclusion may also be raised in a 12(b)(6) motion to dismiss. See Holcombe v. Hosmer, 477 F.3d 1094, 1097 (9th Cir. 2007).

## DISCUSSION

Johnson alleges that the IMU placement process, conditions of the IMU, and the lack of mental health treatment in the IMU violates his constitutional rights. He also alleges that

censorship of his outgoing mail, the taking of fines from his inmate trust account, and the denial of his right to practice Satanism violates his First, Eighth, and Fourteenth Amendment constitutional rights. Defendants move to dismiss all of Johnson's claims on grounds of issue and claim preclusion.

I note at the outset that three of Johnson's claims cannot be evaluated for claim or issue preclusion. Johnson's claim that he was subject to disciplinary proceedings for drawing a swastika arose in July 2008, after all previous actions had concluded. Johnson's claims regarding his inmate trust account and his practice of Satanism do not specify when they occurred. Defendants present no arguments addressing why these claims would be barred by claim or issue preclusion. Therefore, I cannot determine whether to dismiss the aforementioned claims in this context. I proceed, therefore, to analyze only whether Johnson's claims regarding the IMU and mental health treatment are barred by claim or issue preclusion.

Issue preclusion or collateral estoppel may apply when § 1983 plaintiffs attempt to relitigate in federal court issues decided against them in state proceedings. Allen v. McCurry, 449 U.S. 90, 94 (1980) (rules of collateral estoppel apply to civil rights actions, including state court judgments or decisions, civil or criminal). The preclusive effect of a state court action on subsequent federal court litigation is governed by the state's law of issue preclusion. See Dodd v. Hood River County, 136 F.3d 1219, 1225 (9th Cir. 1998). Under Oregon law, if one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding if (1) the issue in the two proceedings is identical, (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding, (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue, (4) the party sought to

be precluded was a party or was in privity with a party to the prior proceeding, and (5) the prior proceeding was the type of proceeding to which this court will give preclusive effect. <u>Nelson v. Emerald People's Util. Dist.</u>, 318 Or. 99, 104, 862 P.2d 1293, 1296-97 (1993). Thus, if all five criteria are met, plaintiff is barred from relitigating claims previously decided in a state court action.

I.    <u>Identical Issues</u>

First, the issues pertaining to the IMU in Johnson's state court Petition for Writ of Habeas Corpus and the issues alleged in his Fourth Amended Complaint appear identical. In his state habeas action, Johnson alleged violations of his rights under the Due Process Clause, the Equal Protection Clause, and his right to be free from cruel and unusual punishment under the Eighth Amendment. Johnson asserted his due process rights were violated because he was not given a hearing prior to being placed in the IMU and because placement segregated from other prisoners is a violation of the Equal Protection Clause. <u>See</u> Winges Aff. Attach. 2, at 81. Johnson's previous Eighth Amendment claim related to the State's alleged failure to provide necessary mental health services in the IMU, confinement allegedly without adequate heat and ventilation, and other poor conditions of the IMU. <u>Id.</u> at 82.

Johnson's Fourth Amended Complaint filed in this case contains two claims related to the IMU. One claim asserts that the alleged conditions in the IMU, such as inadequate ventilation, little stimuli or exercise, twenty-four-hour illumination, and excessive noise, violate Johnson's rights under the Eighth and Fourteenth Amendments. The second claim alleges that the State has failed to provide adequate mental health treatment.

The issues in the instant proceeding, whether the conditions and mental health treatment in the IMU are adequate, are, therefore, identical to issues raised in the state habeas proceeding.

II.     Actually Litigated and Essential to a Final Decision

Second, the issues in the state habeas proceeding were actually litigated and were essential to a final decision on the merits. An examination of the record establishes that Johnson's habeas action litigated the legality of (1) the IMU placement process, (2) the mental health treatment in the IMU, (3) the conditions of the IMU, and (4) Johnson's ability to program out of IMU. See Winges Aff. Attach. 2

With regard to the IMU placement process, Johnson's counsel argued, "I am going to rely on the previously submitted response to the motion to dismiss and supplemental [*sic*] in regards to the IME[1] placement. And I would just like to point out that I think that the Tarber v. Cupp case is controlling, but I think that that's adequately briefed in the supplemental response." Winges Aff. Attach. 2, at 81. Disagreeing, the trial court held: "[T]he Court does believe that Barrett v. Belleque is good law until it's overturned. And for that reason, under Barrett v. Belleque, and also for the reason that Mr. Johnson had an alternative remedy in terms of an opportunity to contest that by administrative review, he has failed to meet his burden of proof on that claim, and that claim is denied." Winges Aff. Attach. 2, at 90-91.

Addressing the mental health treatment in the IMU, the Oregon court said:

---

[1] Throughout the transcript of the state habeas proceeding, the IMU is referred to as the "IME." It is clear, however, that the parties were referring to the intensive management unit. For example, in the defendants' opening statement, counsel summarized one allegation that "Mr. Johnson was deprived of his 14th Amendment rights to due process because he was placed in the intensive management unit." Winges Aff. Attach. 2, at 15. (emphasis added).

Page 9 - OPINION AND ORDER

> The first thing the courts looks at is whether or not Mr. Johnson suffers from a serious medical condition. A serious medical condition is defined in <u>Fox v. Zeenon</u> at 106 Or App 37, page 41, and it's a 1991 case, is a 'medical condition that is serious, immediate, and presents an ongoing health hazard.' The testimony I heard from Dr. Larson was that ADHD is a result of a chemical imbalance. His answer to whether or not it would cause . . . permanent brain damage or deterioration . . . was no . . . . And therefore, the court finds that Mr. Johnson does not suffer from a serious medical condition. Even if he did, again, the question comes back to whether or not the Defendant has been deliberately indifferent to this medical condition, the court finds that he has been treated and evaluated over the years . . . . [T]he Court does not find that the Defendant has met his burden of proof that the Defendant [*sic*] has been seriously indifferent to his medical need, even if that medical need was a serious condition.

Winges Aff. Attach. 2, at 91-92.

As to the conditions of the IMU, the Oregon court noted, "Plaintiff has not met his burden of proof that incarceration [in the IMU] violates his right to be free from cruel and unusual punishment, nor does it subject him to undue rigor, were that to apply." <u>Id.</u> at 94.

Finally, after considering Johnson's arguments on programming and his ability to program out of IMU, the trial court determined, "The Court does find that Defendant has been offered alternative programming, and in his claim, the Court finds Defendant has failed to meet his burden of proof on that issue, as well as all other issues in this case." <u>Id.</u>

The above excerpts from the transcript of the hearing in Johnson's Oregon state court habeas action establish that the issues alleged in Plaintiff's Fourth Amended Complaint regarding the IMU placement process, conditions of the IMU, the lack of mental health treatment in the IMU, and the ability to program out of the IMU, were actually litigated and were essential to a final decision on the merits in the prior state habeas corpus proceeding. Thus, the second element of issue preclusion is satisfied.

Page 10 - OPINION AND ORDER

III.     Full and Fair Opportunity to be Heard

Third, Johnson has had a full and fair opportunity to be heard on the issues in question. Oregon courts consider this element met when there is no restriction on the evidence a plaintiff is allowed to adduce at a hearing or limitation on the time plaintiff has to put on such evidence. See Barackman v. Anderson, 214 Or. App. 660, 668-69, 167 P.3d 994, 1000 (2007). In addition, the Ninth Circuit has held that an evidentiary hearing in a state habeas case satisfies the requirement of a full and fair opportunity to be heard and determined under federal standards. Silverton v. Dep't of Treasury of United States, 644 F.2d 1341, 1347 (9th Cir. 1981).

The transcript demonstrates that the state court placed no limitation on the evidence that Johnson was allowed to offer. At the hearing, the Oregon court considered the expert testimony of Jerry K. Larson, a psychiatrist. The state court also considered all documentation provided and heard oral argument from both parties. In addition, Johnson was represented by counsel. Moreover, the court admitted all of Plaintiff's exhibits: "I'm going to admit 1 through 11, and I'll give them the weight that they may have toward any issues in this case." Winges Aff. Attach. 2, at 5. For the above reasons I conclude that there was no restriction on the evidence Johnson was allowed to offer and, therefore, Johnson had a full and fair opportunity to be heard in the state court proceedings.

IV.     Party Precluded was a Party or Privity to Party in Prior Proceeding

Fourth, the party sought to be precluded here, Johnson, was clearly a party in the state habeas proceeding. Therefore, this element is satisfied.

Page 11 - OPINION AND ORDER

V.  Prior Proceeding was Type of Proceeding Court will give Preclusive Effect

Fifth and finally, the state habeas proceeding was the type of proceeding to which this court will give preclusive effect. Oregon state courts give habeas proceedings preclusive effect. See Eli v. Lampert, 194 Or. App. 280, 287, 94 P.3d 170, 174 (2004). The Ninth Circuit has also held, "[B]ecause of the nature of a state habeas proceeding, a decision actually rendered should preclude an identical issue from being relitigated in a subsequent § 1983 action if the state habeas court afforded a full and fair opportunity for the issue to be heard and determined under federal standards." Silverton, 644 F.2d at 1347 (holding issue preclusion prevented California attorney who used state habeas proceeding to seek injunction requiring state bar to expunge references of disbarment from relitigating the same issue in a § 1983 action in federal court). Thus, I hold the fifth element of issue preclusion is satisfied.

For all of the above reasons, I hold that re-litigation of plaintiff's claims in this action are barred because all five criteria of issue preclusion have been met. Johnson cannot relitigate his claims that the IMU placement process, conditions of the IMU, and the lack of mental health treatment in the IMU violated his constitutional rights because those claims were previously decided by the Oregon state court.

Since I hold that Johnson's claims regarding the IMU and mental health treatment are barred by issue preclusion, I do not reach the question of whether or not the same claims would also be barred by claim preclusion.

///

///

Page 12 - OPINION AND ORDER

## CONCLUSION

Defendants' Motion to Dismiss (#92) is granted in part and denied in part. Johnson's remaining claims are for alleged censorship and disciplinary action related to his outgoing mail, the prison's denial of his alleged right to practice to practice Satanism, and for the alleged improper removal of fines from his inmate trust account.

IT IS SO ORDERED.

Dated this      23rd         day of July, 2010.


                                        /s/ Garr M. King
                                        Garr M. King
                                        United States District Judge